Clark, J.
Under a special act of the legislature, passed March 5, 1887 (Yol. 84, page 321), the commissioners of Pickaway county proceeded to remodel, and make additions to the court-house in that county.
They employed architects, and procured plans and specifications, and estimates to be made in remodeling, and in the various changes, alterations and additions to the court-house, *87 including the furniture for the county offices, and advertised, and received bids and made contracts for said work, and issued and sold bonds for the payment of the same.
On the 28th day of December, 1888, the commissioners caused the following notice to be given :
“Notice to Contractors.
Auditor’s Ofpice, Circleville, 0., Dec. 28th, 1888.
“ Sealed proposals will be received by the Board of County Commissioners of Pickaway County, Ohio, at the office of the Auditor, until 12 o’clock M., of Wednesday, Jan. 23d, 1889, for the furnishing of all furniture and fixtures (including vault furniture), for the new court-house now erecting, according to the plans, specifications and schedule prepared therefor by Weary & Kramer, Architects, and are now on file at the Auditor’s office.
“The right is reserved by the Commissioners to reject any or all, or to accept any bids. By order of the Commissioners of Pickaway County.
“ S. W. Miller, Auditor.”
Before said proposals were advertised for, estimates for said
furniture had been made as follows:
Furniture and fixtures complete..............$11,000 00
Vault furniture (made of wood)................ 4,500 00
Vault furniture (made of metal)............... 6,000 00
Six proposals were filed — four for wood and two for metal. The two proposals for metul furniture, were:
The Office Specialty Manufacturing Co......$3,976 50
and The Fenton Manufacturing Co............ 5,325 50
The proposal of The Office Specialty Co., included all the labor and material required under the plans and specifications for said furniture.
The Fenton Co.’s proposal was defective, in that it contained 200 roller shelves and nine drawers more than were required by the specifications, at an alleged cost of $384.30; and it was deficient in quantity, as to 21 drawers which were required by the specifications, at an alleged cost of $117.22.
*88 The commissioners, after opening the bids, and having decided to adopt the metallic vault furniture, accepted the bid of the Fenton Company, and awarded it the contract; and after correcting the foregoing mistakes in its bid, by deducting the materials not required by the specifications, and by adding the materials which were required by the specifications, entered into a contract with said company for the furnishing of said vault furniture, at the sum of $5,058.92.
The Office Specialty Company at once gave notice of its intention to apply to the court for a mandamus, claiming its right to the contract under its bid, and objecting to the execution of a contract with the Fenton Company, .
On the 81st day of January, 1889, The Office Specialty Co. filed its petition in the court of common pleas, setting forth in substance the foregoing facts, claiming its right to said contract, and charging that the award of said contract to the Fenton Co., under the circumstances, was not in the exercise of a proper and lawful discretion, and operated as a fraud upon its rights, and praying for a peremptory mandamus.
The commissioners answered, admitting substantially the foregoing facts as to the letting of said contract, the mistake in the Fenton Co.’s bid, but claiming that the contract was awarded to the Fenton Co. for the reason that they were authorized by law to let said contract in the éxercise of their judgment and discretion; that in their opinion,the furniture of the Fenton Company was the best in quality, the most suitable in design, and, all things considered, was the cheapest and most conducive to the best interests of the county, and also claiming that the requisite data for correcting the mistakes in the Fenton Co.’s bid, were apparent on the face of the same.
A reply was filed by the relator, The Office Specialty Company, denying the foregoing allegations of fact, and the case was heard on evidence in that court, Judge Pugh sitting. Judgment was given for the relator, awarding a peremptory mandamus against the commissioners. From this judgment the defendants appealed.
The writ of mandamus may be issued to compel the per-, formance of an act, which the law specially enjoins as a duty *89 resulting from an office, trust or station. It may require an inferior tribunal to exercise its judgment, or to proceed to the discharge of any of its functions, but cannot control judicial discretion. Rev. Stats., secs. 6741-2.
There is no question in this case, under the various decisions of the Supreme Court of the State, as to the right of parties to resort to the remedy in a case like the one at bar ; and no question is made as to the appropriateness of the remedy, if the relator has made a case entitling it to relief. It is incumbent on the relator, in order to succeed, to show that it has a clear legal right to have the contract awarded to it.
Before the contract can be awarded, therefore, the party or parties must show, that all the requirements of the law have been substantially complied with. State ex rel. v. Barnes, 35 Ohio St. 137; Ohio ex rel. etc. v. Yeatman, 22 Ohio St. 546; Cincinnati Colleqe v. La Rue, 22 Ohio St. 469 ; State v. Cappeller, 39 Ohio St. 460.
It is not enough to show defects in the title of another to whom the contract has been awarded. Ross v. Board of Education, 42 Ohio St. 374.
The alterations of, and additions to, the court-house, as has been stated, were authorized by special act of the legislature, and this court — Judge Bradbury and myself sitting — in a proceeding to enjoin the issuing of the county bonds authorized by the act on certain grounds, so held; yet, so far as this case is concerned and the acts of the commissioners are drawn in question, sec. 795 of the general act, Yol 85, Ohio Laws, page 219, applies. It so specifically provides, and Judge Owen in the case of Commissioners v. Board of Public Works, 39 Ohio St. 633, says: “ If the legislative intent that the general law shall supersede the local and special act is clear, it will of course prevail.”
The important question in this case, as we regard it, is whether the commissioners, in the exercise of a lawful discretion, were authorized to award the contract to the Fenton Company under the state of facts admitted and proven in this case; whether they had a right to accept the bid of the Fenton Company, which was admitted to be defective, and *90 whether there was sufficient data on the face of the Fenton Company’s proposal to enable the commissioners to correct the mistakes, from the proposal itself.
We have examined the proposal and the “recapitulation” of items and prices which the defendants have offered in evidence, and which they claim is competent to be considered, as furnishing such data.
We are satisfied that the “ recapitulation” is no part of the proposal. It was a loose, detached piece of paper, apparently not filed with, nor intended asa part of the proposal; and what we deem conclusive on this point is, that it was not carried into the record as a part of the proposal. And even if we could so consider it, we do not see how it would, aid us. Take for instance the roller shelves; the proposal has in it the figures 260, the recapitulation has 60. Now, on the face of the papers alone, which is right? Of course, a witness could say, and has said, that the 60 is right; but we cannot act on that, the proposal itself having no data whatever on its face as to either.
In a word, we are not able, from the papers before us, to determine either as to the quantity or price of the items which are admitted to be defective,' — which are right and which are wrong, — and are, therefore, unable to sustain the claim made on behalf of the defendants.
This disposes of the Fenton Company’s claim. The commissioners, not having awarded the contract to them upon their proposal as it was when the bids were opened, could not make any contract with them without again giving notice and taking the steps required by law. The'law is their warrant vesting them with, or conferring upon them, their powers. Without it, and without following it substantially, they have ñone. Beaver & Butt v. Trustees, etc. 19 Ohio St. 97; Boren & Guckes v. Commissioners, etc. 21 Ohio St. 311.
It only remains to be considered whether or not the relator is entitled to an award of the contract on its proposal. And first, we say, that we find no want of diligence on the part of the relator ; but, on the contrary, a considerable promptness in asserting its claims.
The defendants allege, on the fourth page of their answer, *91 that “ The separate proposals aforesaid ” (meaning the Fenton Company’s and relators) “ did cover and include all the work, labor and materials, required by them to be done and furnished under said advertisement, and under said plans and specifications.”
The reply admits thi's allegation, so far as the relator’s bid is concerned, to be true. There is, therefore, really, no issue to be tried upon this matter. But we are not inclined to dispose of this case upon any mere technicality. The interests of the public are concerned, and if the answer-admits too much, it can easily be amended to conform to the proof. The relator’s proposal, in so many words, makes the plans, specifications and schedule part thereof, and thereby proposes to furnish all the furniture required by said plans, specifications and schedule. The latter specifically provide that anything in the plans, and not in the specifications and schedule, shall be considered therein, and viceversa. It would seem, therefore, that there could be no trouble as to what the relator has proposed to obligate himself to do.
Should it fail in any particular, if the contract is awarded to it, the defendants will have their remedy. We think that the principle of the cases of Beaver & Butt v. Trustees etc., and of Boren & Guckes v. Commissioners, above referred to, are directly applicable to the case at bar upon this question.
But it is claimed by defendants that the relator did not tender a bond in proper time to entitle it to an award of this contract.
Section 799 provides, that “ The contract shall be awarded to and made with the person or persons who offer to perform the labor and furnish the materials at the lowest price," and give good and sufficient bond to the acceptance of the commissioners for the faithful performance of their contracts, etc.”
The specifications require simply, that the bond shall be given upon awarding the contract.
The relator alleges in its petition-that “ it was at all times, and is now ready and willing to give a good and sufficient bond for the faithful performance of its contract in accordance with the said plans and{specifications as required by law, in case said contract should be awarded to it.
*92 This question was before usjon demurrer to the petition, and we[then held this allegation to be sufficient. We find from the evidence that a bond of [$2500.00 was actually tentered to[the commissioners on the 28th of January ; or at least that the,[bond was then tendered at the auditor’s office, when one of the commissioners.[the president of the board, was present, and that the bond so tendered was sufficient- in amount under the requirements of the law.
No amount of bond appears to have been fixed by the commissioners prior to opening the bids, nor was any bond required by them to be given by the Fenton Company until they had been awarded the contract.
We think therefore, there was no such neglect, on the part of the relator as to defeat its right to the contract, on this account.
It is further claimed that the commissioners in their notice to contractors reserved the right “to reject any or all bids”; and that they should not therefore be required to award this contract to the relator.
This question, we think, does not fairly arise in this case. The defendants do not reject the relator’s bid upon this ground, nor attempt to exercise 'this right.
They passed it by, and awarded the contract to another party, to whom, as we hold, they had no right' to award it. That proposal being defective, can they claim that they have a right to fall back and now say they reject the relator’s bid under the right reserved, or attempted to be reserved, in the specifications to reject any or all bids? It seems to us that the case has passed beyond that point — clearly so.
Indeed, it is doubtful in our minds whether the commissioners under the statute governing these proceedings have the right absolutely, and under any circumstances, in their discretion, to make such a stipulation ; but we do not deem it necessary in the present case to so hold, in disposing of this question. If the defendahts had the right to reject any or all bids, it is certain they did not attempt to exercise that right, and they have assigned no sufficient reason for not accepting the relator’s bid. The case of the State ex rel. v. Directors, etc., 5 Ohio St. 234, does not sustain the claim made by defendants. *93 In that case, express authority was given by statute, authorizing the warden and directors to exercise the right, while no such authority is given by the statute under consideration ; and there was no award made in that case to any of the bidders.
Abernethy & Folsom, and Festus Walters, for Relator.
Clarence Curtain, Prosecuting Attorney, for defendants.
They had not passed by this matter. In the next place, there was evidence of a conceded error in that case, which, if the letting had been made, would have rendered the whole proceeding void.
We are of the opinion that the relator is clearly entitled to the remedy sought in' this case.
A peremptory mandamus is therefore granted, awarding the contract to The Office Specialty Manufacturing Company, as prayed for in its petition, at the cost of the defendants.